The first case for argument this morning is 18-2338, Network-1 Technologies v. Hewlett-Packard. Mr. Duvall? Duvall, yes, Your Honor. May it please the Court, the District Court construed two claim phrases erroneously. The phrase, low-level current, includes the relative term low. Low means below a standard or reference point. Construction of that phrase consists of identifying the benchmark below which the current must be. It must be lower than or below a benchmark. The Court and the parties agreed on what that benchmark is. In fact, in the red brief, H.B. says, quote, the parties agree the reference point for determining whether a current is sufficiently low is below the level needed to sustain startup. That was what was required for construing low-level current, but the Court went on to add a second concept, a lower bound. Given the limitation of time, let me kind of cut to the chase and answer certain questions. Let's assume hypothetically we were to agree with you on at least one of your claim construction points. Why does that necessitate going up? You're asking, you're seeking a new trial. Yes, Your Honor. Even if we agree with one but don't agree with you on the other, where does that leave us in terms of infringement? That was a general verdict form. Yes, Your Honor. We presented evidence that would meet both of the Court's claim constructions. That is, if the Court reversed on low-level current, we submitted evidence from which the jury could find that it met the Court's construction of main power source as a D.C. power source. Therefore, under this Court's precedence, we would be entitled to a new trial. We're not entitled to a new trial only if there is a claim limitation for which we didn't present sufficient evidence. We can't get past J. Mull on an element. And that's true for both low-level current and main power source. We submitted evidence that would meet the Court's claim construction of low-level current. Now, the jury didn't agree with us, but the Court agreed that J. Mull was inappropriate, and we cited and quoted that evidence extensively in our brief. Now, you say with respect to low-level current that it's essentially a one-way vector, that it's just from X down to, well, you say it's not exactly zero, but from X down to some minimal level. But it seems to me that in context, low-level means something other than that, as in if you were talking about a low heart rate, for example, a physician would say, well, perhaps anything between, say, 60 and 25. Because anything below 25 and you're either dead or you're a hibernating bear. I mean, that would be the range that one would talk about in, realistically speaking, of a low-level heart rate, isn't it? Well, Your Honor, I will agree that there are contexts where you can have other words that can impose a lower bound and part of a context. Well, in this case, the only part of the context would be the addition of the words heart rate, which is – but your contention is that when the words low-level show up, that necessarily means there is no lower bound except non-zero. That's right, Your Honor, exactly. But that wouldn't apply to my example. Well, Your Honor, I'm not actually familiar with heart rates and whether or not – Take it that anything below 25 is not going to be found in a living human being. All right. All right. Then I would agree that we're not going to have an actual heart rate below 25. But one wouldn't say that the heart rate is too low to be a low heart rate. Now, in the context of currents, we could design a system with a very minuscule current level that would still function as long as we can measure it. Essentially, if any current can be generated, it can be measured. There's nothing in the claim that imposes a lower bound. As a practical matter, depending on the system you're designing, you're going to have certain limitations that you want to include. There's a preselected condition you're looking for, and you're going to design your current level to establish that. But the question for the court is does the claim language impose a lower bound? Does it say there's a current level that it must be higher than? It must be sufficient to accomplish. The claim phrase low level current doesn't include that. It includes the concepts of the current level, and then it must be low or below a boundary. Let me briefly address the issue of estoppel, which the court found was the reason that the validity finding, the invalidity finding must be over. Well, that goes to the cross appeal, but I'm fine if you want to start talking about it now. If there are no more questions about low level current or main power source, I'm going to just say a few words about the estoppel issue. HP asserts that it was not able to erase any other grounds other than the one that was already asserted in the Avaya appeal. But, Your Honors, if we look at the PTAB's ruling, it did not rule that HP could not submit any other grounds. The PTAB's practice is to allow joinder of additional grounds, if appropriate. And what the PTAB actually ruled, if we turn to appendix 5462, when the PTAB turned down HP's first petition, they said, Notably, petitioners in their motion do not propose a modified schedule if joinder is granted, or explain how the current schedule can be reconciled with the due dates for this proceeding. The basis for turning down HP's first petition was HP hadn't shown how they could consolidate and perform what was needed in a single proceeding. But the PTAB never ruled you can't add any additional grounds. I'm getting a little confused. You want to review here what happened. They clearly were time barred for their own petition. Yes. So they wanted to join another petition. Is it your view that under the law, if the board allows one to join a pending petition, that the joinder or party who otherwise would have been time barred, that they can bring in all of their new issues? Yes, Your Honor. That is the PTAB's procedure. That's their stated practice, and they've done that. And we cite the cases to that effect, Your Honor. What's required is that if you're going to add another issue, you have to then submit a schedule and explain how everything can be done. What HP did with their first petition was they included a different expert's declaration. And the PTAB pointed out, now we've got two experts we've got to deal with. How are we going to deal with this? You haven't told us how we can accomplish all of this. Therefore, they denied that first petition. HP then filed a second petition. I don't understand. If they said we've already got one expert, what excuse could they have had? I mean, if they're going to introduce additional pieces of prior art that are not included in the petition they're joining, they're going to have to be doing a whole lot more legwork and introducing a whole lot of stuff into evidence. So you think the board would allow that? What are the criteria the board uses if they can come up with a schedule? Yes, Your Honor, exactly. And they've done that in other cases. You can join additional issues. What HP should have done was either if they're going to use a different expert, then explain how all this can be accomplished. Here's the schedule that can be followed. Or use the same expert and explain how it can all be accomplished. Can you tell me then how stepping back this whole estoppel inquiry would work? Yes. How broad is your theory going to take us? If I'm a party and I'm time barred or whatever and I don't file an IPR, can the defendant or the patent owner in the case I'm litigating in district court say, you're a stop from challenging validity because you could have filed an IPR and you didn't? No, Your Honor. What you have to do is file a petition and have it go all the way to final judgment. And that's what HP did. HP filed its own IPR petition. It sought joinder in order to avoid the time bar. But it was joined as a party. Its petition wasn't joined. Yes, Your Honor. Its petition was joined. It filed its own petition and that petition was joined. They were consolidated. It wasn't just added as a party. It had to file its own petition. And what it did in its second petition was file a petition that then duplicated a vias ground. In its first petition, it hadn't duplicated a vias ground. It had modified it slightly and had a different expert. Right. And they weren't allowed to do that. No, they would be permitted to do that if they had explained to the PTAB how we can consolidate this, how can we get all this done. There's no rule prohibiting it. Now, Your Honor, in terms of… Well, go ahead. Well, in terms of breadth, think of the perverse rule that we would have if HP was right. A via met the timing deadline. It timely filed a petition. A via was fully stopped when it lost. Under HP's rule, HP misses the deadline. HP gets to take advantage of the IPR procedure. And if it loses the IPR, there's no estoppel. That creates a perverse incentive for parties that are part of… if there are multiple defendants being sued, for a defendant to hold back, miss the deadline, and then file a duplicate petition and join so that it's not stopped. Suppose that, in this case, HP had filed a motion for join during a petition and had included not only the reference that a via had included, but also had included the Fisher patents. Would you say then if the board then denied with respect to either all of them or with respect to the Fisher patents in the pre-SES period, would you say that there's no estoppel as to the Fisher patents in that case? Under this court's Shaw case, that's correct. There's a ruling at that point that it can't bring it. If there's been a… there's a statutory rule… The problem, the critical failure here, in your view, was that they did not list the Fisher patents in their first or second motions for join. Yes, Your Honor. If they would have included those patents and tried to get that ground raised before the board, if they did what they should have done, the board would have had the opportunity then to deny the petition altogether, in which case there's no estoppel, or to deny one ground and grant on the other, in which case there would be no estoppel and they denied ground. But HP didn't do that. They intentionally held it back, didn't want to present it, wanted to have this very narrow petition, and as a result we went through a final proceeding. We got a final order. The statutory estoppel applies. Unless there are any further questions, I'll reserve the balance sheet. Thank you. Good morning. Good morning, Chief Judge Prost, and may it please the Court. On the main appeal from Network One, three quick points. On low-level current, Network One agrees that the specification must be examined to establish the objective standard for a subjective term. And they agree what that standard is. It's sufficient to sustain the startup. Something can't be sustained unless it's been started up in the first place, and that same sentence of the specification says that it must be begun and not sufficient to sustain. Network One even cited the Exxon case from this court, which says, 265 at Fed Third at 1381, when a word of degree is used, the court must determine whether the specification provides a standard for measurement. That's what the district court did here. Absolutely unimpeachable claim construction rationale. Second, on main power source, there's a different thing going on here. My friend makes it sound in the briefs as if this is importing a limitation from the specification. That's not our position. Our position is that our expert, Dr. Nykerk, presented a declaration explaining what a person of skill in the art would understand at the time of the application. The district court credited that explanation. It was unrebutted by the patentee's expert. And under TEVA, that's entitled to clear error review by this court. This is a simple person of skill in the art analysis supported by expert declarations and credited by the district court. It's also, Chief Judge Prost, to answer one of your questions, irrelevant to the verdict that this main power source limitation, whichever way it goes, it doesn't affect the verdict. Third and finally on our non-infringement arguments, the HP switches generate the low-level current within a different component called the PoE plus chip. This was undisputed at trial. So that regardless of either of the two, this is the delivering from limitation. So if either or both of these other constructions were changed, there was still evidence in the record that required the jury to find that the delivering from limitation. You haven't appealed the claim construction on that delivery unit. No, we agree with the claim construction, Your Honor. We're simply pointing out that the record evidence, if the court were to reverse either of the claim constructions, this is an alternative ground for affirming the jury's verdict of non-infringement. But Dr. Knox had testimony in which he explained why it was that the delivering didn't have to come just from the PoE chip, but could come from further back. Why isn't that enough at least to create an issue, given the claim construction that you had? Judge Bryson, Dr. Knox explained that the power could come from the main power source. The current. No, no, he said power. Current is different than power. Power is current times voltage, amperage times voltage. Right. The power in that diagram is coming out at 50 volts. No amperage is disclosed. He never dealt with the fact that David Dwelley, our fact expert, testified that once the power, the electrons, is inside the PoE chip, the current is actually generated from within the PoE chip. And current is not power. And if we go to the specification. I thought he had testified in terms of current, which caught my eye. He testified in terms of, quote, unquote, our detection current when he was talking about a hypothetical. He never testified that as to the HP chips in particular. Now in HP switches, did you determine whether or not their detection current is delivered from the main power supply that you identified? And he says yes. And he goes on. He's talking about current there, right? Well, no, Your Honor. He's talking about the detection current, which if you, respectfully, if you read that whole passage from 1790 to 1793 in the appendix, it is talking about the power coming out. Because in the diagram, which he made up, which is not our switches, by the way, he's put in a main power source that does not have any disclosure as to the current. And there's nothing in his testimony about a current, let alone the amperage of that current, coming out of the PoE chip. Chief Judge Prost? I'm going to go back to the main power source. Your view was quite definitively, as I understood it, that even if we were to disagree with the claim construction, that would not affect the infringement. Correct, Your Honor. There's no AC. The debate is between DC and AC, right? There's no AC component or AC power source in the accused devices. It's not clear to me what the import of the changed construction would be. If it were AC, as my friend says, that might read on some other devices. But our devices, the accused devices at trial, are DC all the way from the transformer through the end of the circuit. So the DC versus AC issue doesn't affect the jury's verdict of non-infringement. It's an academic question as far as the accused devices are concerned. Their theory, and since I won't get up again, probably I'll tell you what my friend is going to say, is that it's a theory of indirect infringement that whenever the consumer plugs something into the wall that has AC power, that that somehow completes the claim limitation. But the main power source, which is the component described in the claim, has to do two things. It has to supply power to the data node, the switch, and it has to deliver the low-level current to the remote access device. And Dr. Nykerk testified that the only thing that could do those two things simultaneously is a DC power supply. So of course it's going to be plugged into the wall at some point. That's not the question. The question is whether inside the claimed circuit there is an AC power and there's not. Okay. Can we move on to estoppel? Thank you, Your Honor. You know, our estoppel point, I think, has become more important in light of the SAS Institute case, where the PCAB now has to institute on an original petition, if it institutes at all, it has to institute on all claims and all grounds. It will often be the case that there will be joinder parties after the one-year bar because of the nature of this industry. It is often the case that these patents are asserted simultaneously or nearly so against multiple defendants, often in different jurisdictions. And of course they all keep an eye on things. And our position is very simple. An original petitioner and a joinder party should be governed by slightly different standards with respect to the estoppel provision because of the realities of PTAB procedure. Once an original petition has been instituted, the world knows the grounds on which the PTAB is going to rule. A joinder party after the one-year bar is generally limited to those grounds. The precedential opinion panel of the PTAB said that, told us all that, in the Propant decision that we cited while this appeal was pending. The only exception they identify is when the patent owner asserts different claims or different grounds in a trial that would make it unfair not to allow. So that as a general matter, the PTAB is not going to institute on additional grounds for the joinder party. My friend doesn't cite a single case in which the PTAB has ever done that. But you heard his comments as I did, that when you initially proposed doing that, the board didn't reject it wholesale. It just said it needed some more information from you, which you failed to provide. I would submit, Chief Judge Paros, that's a bit incomplete. First, all of the references, Chang, Woodmiss, and Fisher, had previously been presented by Sony in a different IPR petition, and the board denied on those. So it was not a mystery as to the Fisher patents ground, what the board's view was. As to the additional grounds that HP added in its joinder petition, the board said we had not proposed a different schedule, but it said more pointedly that new issues were presented in addition to those in the original petition, and denied on that basis, and at about the same time, granted the Dell petition, which specifically noted no new issues are presented. And then we presented a second petition in which no new issues were presented, and they granted it on that ground. We looked pretty hard, Your Honor, and I could only find one case in the history of the PTAB in which the PTAB has ever allowed a joinder party to add additional grounds after the one-year part. So it's not the case that they ordinarily do that. The case is they ordinarily don't do it, and the presidential opinion panel, the director told us that's what they intended to do going forward. So as a practical matter, as a reasonable matter, to use the language of the statute, a joinder party really can't add additional grounds. And, you know, Judge Bryson, you asked my colleague about would it have been enough if HP had just put in the Fisher patent grounds, and of course it would have been. I mean, I'm not going to dispute that. That, of course, is right. But it's not, as you all know, a matter of simply listing the grounds on a piece of paper. To put in a petition, you've got to put in your expert reports, your analysis. It's an expensive, major undertaking to put together these petitions,  Of course, if you were doing it with the full expectation that it wouldn't be instituted and you were just doing it in order to have a procedural device to protect yourself for later under Shaw, then presumably you wouldn't have to put out that kind of an effort. I'd be nervous about that, Your Honor, because then the board would deny on the ground that it's an insufficient showing, and then you'd be stuck either way. Why would you be stuck in that case if they denied it? You wouldn't be stopped, right? I mean, I guess you could attach your invalidity contentions to your petition, but that's certainly not the way PTAB practice has gone. The PTAB has expected a full petition and supported with the assumption that it would be granted. I'm not sure there's a good faith basis for doing that. I mean, I'm a courtroom lawyer, not a PTAB practitioner, but I know that's not the way anybody does a PTAB petition. And we know from Prop Ant that it is an exercise in futility. We know that unless there's some change in the district court, there is no basis to simply include those additional points. And, you know, the court respectfully has before it a choice of bright-line rules, right? For joined or parties after the one-year bar, either the requirement is, as the district court applied here, anything you knew about has to be included. And look, parties could deal with that if that were the rule, but I don't think that's what the statute says. Or joined or parties after the one-year bar, at least in cases where the PTAB has indicated that additional grounds won't be accepted, do not need to list every ground because it would be an exercise in futility. And the statute includes that word reasonable. That, you know, it does not say grounds that were raised. So the regime you are advocating is that if you want to join, you join a party, but you're left with the grounds that have already been instituted in the property filed petition, that you, as a party who was time-barred otherwise, the statute says you can join as a party, but that does not include your being able to raise additional new grounds that were not included in the original petition. Precisely, Your Honor. And that makes sense, you think, because it would kind of be unfair to patent owners, in a way, if people could keep piling in, even if they didn't really have the right to be there with their petition because they were clearly time-barred. Yes, and I'll take it one step further than that. If that's the rule, then you are going to have this piling on, and then any joinder petition that does get instituted, we're going to have a SAS question about whether they have to institute all the grounds proposed in that, right? Because I think a joinder petition is different than an original petition under the statute, and the board certainly has treated it that way. But SAS Institute certainly gives the board the incentive to enforce propant, not to deviate from it, and therefore it's clearer. And to be clear, once a petition has already been instituted, a party like HP may choose to join. Look, we're down in eastern Texas. We were ready, willing, and able to try this case. We did try this case. We got the claim constructions from multiple judges. We went to a jury. A jury found these claims not infringed and not invalid, and we're here to support that judgment on infringement. Wait, the jury found them invalid. Yeah, excuse me, not infringed and invalid. And we joined the Avaya petition after it was instituted because it was instituted, and because once the petition has been instituted, there's always the risk that the petitioning party may settle, and so if you're in active litigation, it's often a good practice to join a pending petition. That doesn't open up everything else under the rule. Okay, if we were hypothetically to agree with you on some of the estoppel analysis, where does that leave us? You're advocating a reversal, but obviously it seems to me the most reasonable course would be a vacate and remand and arguably a new trial. Well, certainly there's three options for the court. You could reverse on the ground that there is sufficient evidence to support the verdict and just reinstate the verdict. You could remand for a new trial. But there was, I mean, this case was tried, and it was tried on the Fisher systems and on the Fisher patents, arguing that both of those established invalidity. So how are we to pick apart a jury verdict now, not knowing whether or not they indeed relied on the Fisher patents, which maybe that evidence shouldn't have gotten in the first place because that was problematic, right? Network One argued at trial, Your Honor, in the appendix at page 2502, that the Fisher system was redundant. It was unnecessary, that the Fisher patent ground alone was enough. And Dr. Nykerk testified that everything taught in the Fisher system was taught in the Fisher patents. The Fisher system was a state-of-the-art evidence. It was there for the jury to understand how Dr. Fisher implemented his patent. But didn't you make arguments that, I mean, specifically not saying this is background noise or this is just to show you state-of-the-art, that this is a basis for concluding that there was obviousness here? We argued that it was prior art. The district court disagreed, but it was prior art as an implementation of the Fisher patents. I mean, the inventor got the patent and also developed the system implementing that patent. There's not a delta between the two. And as far as the teachings, every element of the claim, they were all disclosed. Why isn't this something as to which the district court is in a much better position than we are to make a judgment? So that was going to be the third option I was going to propose. Judge Bryson has asked Judge Schrader, who did not reach this question, if the estoppel is taken away, as we submit it should be, whether or not a new trial is required, because he sat through the evidence and is more familiar with that point. Because he did not rule, as Network One points out, on the conditional new trial motion. So there's actually no ruling on a new trial for the court to review. So there's reversal, new trial, or the halfway, which is to send it back to the consider. Thank you. Thank you, Your Honor. I'd like to start with Your Honor's question about what happens if main power source is reversed. Yes, Your Honor, contrary to HP's position, patent claims do not require that the main power source reside as a component inside the switch. In fact, if we look at Figure 3 of the patent, the preferred embodiment has the main power source as a separate component. You want to give me the page? That's Appendix 329. Okay. If we look, the main power supply is 70. That's the main power source on the left. That is a separate component from the four switches. There are four network switches, and the main power supply feeds all four of those, and each of those switches has eight separate ports. So in the preferred embodiment, the main power supply is outside the data node. This is also shown in Figure 1, just two pages back. Power source, data node, two separate components. As a result, we can point to an AC or DC power source that is outside of the switch, and we did exactly that. For example, if we look on page 65 of the blue brief, there's a photograph of an operating system that exactly matches Figure 3, a separate component, the AC power supply, is outside the switch, feeds into the switch. So it's a very common configuration. It's one that we accused. We had evidence of it. If the claim construction were reversed, we could put that in front of the jury and say, here's an AC main power supply that exactly matches the preferred embodiment. We're entitled to do that, Your Honor. We need a new trial on that claim element. I want to briefly address, unless Your Honor has any questions about that, the question of estoppel. The rule for estoppel is not that if you're joining the petition, you can't add new issues. The PTAB rule is that you can do it. It's true that they rarely do it, because most people don't take the time and effort to file it timely enough and to present the schedule that's going to allow it to all be accomplished. Most people simply duplicate another claim. So your view of the estoppel principle, which would apply, is every time any party is joined in an ongoing IPR, any question that they could have otherwise raised with respect to validity, 102 and 103, is foreclosed, therefore. In other words, there is stop from raising that at a trial? Yes, Your Honor. That's the statutory language. Reasonably could have raised. The factor that's considered is, it looks at from the point of view of the petitioner, could they have raised it? Not what would the reaction have been of the PTAB to it. Could they have raised it? And they could have raised it reasonably. They knew about it. Therefore, they're stopped. Again, Your Honor, if we don't have that rule, we have a perverse system where somebody who misses a deadline gets to join an IPR. So we've got HP and Avaya participating in the same IPR. Avaya did it right. HP didn't do it right. Yet, under HP's rule, HP gets to take full advantage of the IPR process and possibly knock out our claims. And if they don't, there's no estoppel. That makes no sense. I think that's not a characterization I would give to HP's position. HP's position is that they can't join other stuff. So they don't derive any benefit other than what's already been established by a timely petition that's been filed. That doesn't seem to be a horrible policy choice to the extent we get to do policy. I mean, that seems fair to patent owners, too, so that the patent owner doesn't get double-whipped by not just having the party join whatever that means in terms of resources being brought to bear, but that otherwise petitioners who clearly file time-barred allegations of unpatentability get to have all of those allegations asserted against a patent owner just by getting joined. That doesn't seem like a great policy choice, either. The patent owner is double-whipped, Your Honor. The whole policy behind the IPR process and estoppel is you can choose one or the other. Under HP's approach, they get to go forward with an IPR and potentially knock out the claims. They could have filed a timely one as well and asserted other petitions. Your position seems to be that no petitioner could ever raise an invalidity contention at trial because they always have the opportunity. You can't be saying that estoppel applies because any defendant in a district court proceeding could have filed the timely petition and didn't. No. You're not saying that, right? No, it requires two things. You have to have filed a petition, had it instituted, gone to final decision. Okay, well, this person didn't file a petition. Their petition was rejected because it was time-barred. That's not true, Your Honor. No? No, they did file a petition, and it was accepted. The petition was granted by the patent office. That's why they got to participate. It's one of the things they say in their brief that's misleading. They filed a petition. That petition was joined with a bias petition. Those two petitions proceed. Where is it? Does the statute talk about joining parties or joining petitions? Because they're two sections. In the statute, I know they talk about consolidation. Consolidation in my brain is you take two cases and you consolidate them. And then they talk about joinder of parties, not of petitions, but of parties, right? Your Honor, I don't recall what that statutory language is. I can tell you what happened here, which is that they filed a petition. The petition was instituted, and it proceeded to a final decision. A stopple applies under those circumstances, Your Honor. That's what the statute requires. It says if they raised or reasonably could have raised a ground, they're stopped. And the whole point is to say, let's get the 102 and 103 grounds that you best think Wait, I guess, can you just go back and clarify to me that their petition was instituted? Yes. I thought they were time barred in their petition that they were filed. No, Your Honor. And then they come in and they want to join. No, what happened was during the time period to file their initial petition, they missed it. They didn't file any petitions there. Okay. Then they filed a petition and joined her with that petition, but they added additional grounds. They also added a different expert. They didn't explain how it could be done. The PTAB denied that petition, didn't institute it. Then they filed a second petition. In the second petition, they duplicated the Avaya ground, used the exact same expert declaration, and explained how this wouldn't delay anything if the PTAB were to join them. The PTAB then instituted trial on that petition and consolidated it. There were three separate petitions, in fact, that were consolidated for trial. So it was instituted. A final decision did enter, and as a result, under the statute, estoppel applies. They're trying to get away from estoppel, but estoppel applies. I see I've used my time. Thank you. Thank you. Okay, we get response just on the cross-appeal issue. I'll be very brief, Your Honor. This issue that was just being discussed. Yeah, so let me ask you about it, about the consolidation of petitions versus the question of joining parties, which is what the statute refers to. My understanding is, after the time bar, it's a joinder of parties, which does not permit a joinder of issues. Although it's done through the instrument of a petition and a motion for joinderization. That is correct, but it's treated differently. Which is why we talk about an original petition and a joinder petition. Before the one-year bar, the PTAB treats it as an original petition. There may be multiple ones, multiple parties. Calling it a petition when it's a joinder petition adds some confusion here. But they call it, right. But after the one-year bar, it is called a joinder petition, and it is considered only as a joinder petition. That is, it has to be attached to a pending one. This court, the concurring opinion in the NIDAC case from this court, addressed this whole point very clearly. It cited in the propant decision from the presidential opinion panel and explained that after the one-year bar, the statute allows the director to join a party, but not to join additional issues. That's as a matter of statutory construction because there's a distinction in the statutory language as Chief Judge Prost pointed out. Unless there are other questions. Thank you. Thank you, counsel. We thank both sides, and the case is submitted.